IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUI VOONG,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

      Defendant.
_____/

No. CIV S-06-1990 DAD

ORDER

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment or remand and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion for remand is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

Plaintiff applied for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (the Act) on April 11, 2003. (Transcript (Tr.) at 44-72.) The Commissioner denied plaintiff's application initially on September 30, 2003, and upon

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

reconsideration on September 30, 2004. (Tr. at 32-34.) On December 30, 2004, plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. at 43.) At the hearing conducted by ALJ L. Kalei Fong on December 6, 2005, plaintiff was represented by counsel and testified through an interpreter. (Tr. at 213-28.) In a decision issued on March 17, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (Tr. at 12-21.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant's major depressive disorder and schizoaffective disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The claimant has the residual functional capacity to understand, remember and carry out simple one or two-step instructions. The claimant also has the ability to relate and interact with others not requiring significant close/coordinated interactions. She can also adapt to stresses common to a normal work environment. The claimant can also maintain concentration, attention, persistence and pace and she can maintain regular attendance. In other words, the claimant retains the ability to perform simple, unskilled work.
>
> 6. The claimant has no past relevant work (20 CFR § 416.965).
>
> 7. The claimant is a 'younger individual' (20 CFR § 416.963).
>
> 8. The claimant is 'unable to communicate in English' (20 CFR § 416.964).
>
> 9. The claimant has no exertional limitations (20 CFR § 416.945).
>
> 10. Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.

1             11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. at 20.)

On July 7, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 4-8.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 5, 2006.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances four arguments in her motion for summary judgment. First, plaintiff argues that the ALJ failed to properly consider all of her impairments. Second, plaintiff asserts that the ALJ unlawfully rejected the opinions of the consultative psychiatrists without a legitimate basis for doing so. Third, plaintiff contends that the ALJ improperly failed to credit plaintiff's own testimony and third party statements as to the nature and extent of plaintiff's functional limitations. Fourth, plaintiff argues that the ALJ found her not disabled based on the

grids, without the expertise of a vocational expert, despite the presence of extensive nonexertional impairments. The undersigned finds plaintiff's first argument persuasive.

At step two of the sequential evaluation the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairments are so slight that it is unlikely those claimants would be disabled even if age, education, and experience were taken into account. Yuckert, 482 U.S. at 153.

The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including (1) physical functions, such as walking, standing, sitting, and lifting, (2) capacities for seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (citations omitted).

Here, the ALJ noted that plaintiff's several disability reports allege disability due to back pain, migraine headaches, insomnia, depression, anxiety, arthritis, dizziness, poor memory, pain in both knees, decreased concentration and energy, and blurred vision. (Tr. at 13 (citing Exs. 1E [tr. at 75-84], 2E [tr. at 85-90], 8E [tr. at 121-28] and 9E [tr. at 129-35].) The ALJ determined that plaintiff suffers from two medically determinable impairments that are severe: major depressive disorder and schizoaffective disorder. (Tr. at 20.)

/////

Plaintiff argues that the ALJ failed to properly consider and include her chronic rhinitis and headaches as severe impairments at step two of the sequential analysis. Plaintiff asserts that these impairments and their related symptoms are thoroughly documented in the medical record. With respect to chronic rhinitis, plaintiff cites medical records from 2003 to 2005 (tr. at 147-49, 151, 153, 197, 204-07) and suggests that her high out-of-range eosinophils count on April 29, 2005 (tr. at 201) may reflect allergic disease or infection. With respect to headaches, plaintiff cites treatment records (tr. at 139-41, 144, 150-51, 202, 206-07) and her own testimony (tr. at 227) as evidence that she consistently complained of headaches, was assessed with headaches, and was prescribed and took medication for her headaches. Plaintiff asserts that Dr. Turkot, a consultative examiner, erred when she reported that plaintiff does not take any medications for her headaches. (Tr. at 165).

Defendant, citing Social Security Ruling 96-49, responds that mere symptoms are not impairments and cannot by themselves establish the existence of an impairment. Defendant argues that the ALJ delineated the findings of all relevant medical sources and properly evaluated all of plaintiff's impairments and functional limitations.

The ALJ noted plaintiff's "history of medical treatment for upper respiratory infections and headaches associated with the common cold and allergies" but found that plaintiff "has not been diagnosed with any musculoskeletal impairment that would affect her ability to perform work activities." (Tr. at 13.) The ALJ's assessment of plaintiff's rhinitis and headaches includes a reference to Dr. Turkot's observation that plaintiff was not taking any medications for her headaches but also refers to primary care records from July 2003 to June 2005 showing that plaintiff was treated during that time for upper respiratory infections and allergies and that medications were prescribed. (Tr. at 14 (citing Exs. 2F [tr. at 145-51], 3F [tr. at 152-53], and 12F [tr. at 196-205]).) The ALJ concluded that there were no significant clinical findings of any physical impairments caused by or related to plaintiff's upper respiratory infections, headaches, back pain, arthritis, pain in the limbs, carpal tunnel syndrome, and seizure activity. (Tr. at 13.)

On the basis of that conclusion, the ALJ determined that plaintiff has no physical impairment that affects her ability to perform work activities. (Id.)

Turning to the issue of mental impairments, the ALJ determined that "the record documents the claimant has been diagnosed with a major depressive disorder and schizoaffective disorder, which affect her ability to perform the mental demands of work activities." (Tr. at 15.) The ALJ found that plaintiff's mental impairments "are characterized by sleep disturbance, difficulty concentrating and thinking, decreased energy, and feelings of worthlessness" and that these symptoms cause plaintiff to have mild restrictions in her activities of daily living, mild to moderate difficulty in maintaining social functioning, and mild to moderate deficiencies of concentration, persistence, or pace. (Id.)

The undersigned has reviewed the administrative record with particular attention to those portions of the record cited by plaintiff as evidence that the ALJ should have included chronic rhinitis and headaches as severe impairments at step two of the sequential analysis. With regard to chronic rhinitis, it is noteworthy that plaintiff's disability reports identify many illnesses and conditions as limiting her ability to work, but no report alleges disability based on chronic rhinitis or any related or similar condition, such as upper respiratory infections, allergies, or allergic diseases, despite the fact that the disability reports indicate that plaintiff has been prescribed medication for allergies. (Tr. at 76, 81, 132.) The treatment records cited by plaintiff document episodes of rhinitis, usually in the context of a common cold or allergies, over a period of several years, but these records do not demonstrate that such episodes place any limitations, much less significant limitations, on plaintiff's ability to perform basic work activities. The opinions of consultative examiners Dr. Behniwal on September 10, 2004, Dr. Turkot on September 19, 2004, and Dr. Mehtani on January 8, 2006 do not include chronic rhinitis, upper respiratory infections, or allergies in their recitation of plaintiff's chief complaints, in their diagnoses, or in their functional assessments. (Tr. at 157-61, 162-67, 209-12.) This record does not demonstrate that plaintiff's rhinitis has any impact on her ability to perform basic work

activities. The undersigned finds that plaintiff has not met her burden of showing that her rhinitis, whether chronic or not, is more than a slight abnormality. See Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1989) (the mere existence of a disorder does not establish disability, and the claimant must offer evidence of an impairment's disabling severity).

In contrast, plaintiff's disability reports cite headache as an illness or condition that limits her ability to work. In one report, plaintiff's list of disabling illnesses and conditions includes headaches that cause vomiting, and her list of medications includes Cafergot for headaches. (Tr. at 76, 81.) In another report, plaintiff's list of disabling illnesses and conditions includes migraine headaches. (Tr. at 121.) In a third report, plaintiff lists Cafergot as a medication she takes for headache and identifies the side effects as blurred vision, dry mouth, and dizziness. (Tr. at 132.) Treatment records up to the date of the administrative hearing in late 2005 reflect that plaintiff complained regularly of headache beginning in 2003 and that Dr. Desai prescribed Cafergot for migraine headaches beginning in 2004. (Tr. at 140, 150-51, 153, 202, 204, 206-07.) A 2004 report by an adult third party, plaintiff's friend Lin Tran, indicates that plaintiff's husband gives plaintiff her medications every day, including one 100 mg. tablet of Cafergot daily. (Tr. at 98, 103.)

Dr. Behniwal noted plaintiff's history of migraine headaches and included migraine headaches in his Axis III diagnosis. (Tr. at 158, 160.) Dr. Turkot listed daily headaches as the first of plaintiff's chief complaints, noted plaintiff's complaint of "daily headaches for a long time," identified Cafergot as a medication that plaintiff takes, addressed plaintiff's periodic headaches in her review of systems, and included "history of frequent headaches" in her diagnoses, although she stated erroneously that plaintiff "does not take any medications for her headaches." (Tr. at 162-63, 165.) Dr. Mehtani's comprehensive psychiatric evaluation includes diagnoses of chronic pain and knee disorder on Axis III and noted that some of plaintiff's psychotropic medications cause headache as a side effect. (Tr. at 209-10.) At the administrative hearing, when plaintiff's counsel elicited testimony about where plaintiff experiences pain in her

body, the first type of pain cited by plaintiff was headaches, and she testified that her pain is constant. (Tr. at 227.)

The undersigned finds that the record demonstrates that plaintiff's headaches constitute more than a slight abnormality. In reaching this conclusion, the undersigned is mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). See also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Here, the ALJ's decision not to include plaintiff's headaches as a severe impairment at step two is not supported by substantial evidence in the record as a whole. See Schneider, 223 F.3d at 973; Morgan, 169 F.3d at 599). Thus, the ALJ erred at step two of the sequential evaluation by failing to recognize plaintiff's headaches as a severe impairment.

While the evidence related to plaintiff's headaches may not establish disability at step two, and may or may not ultimately lead to a finding of disability in combination with her other impairments, it was clear error to omit headaches from the severe impairments identified at step two. Remand is required so that an ALJ can proceed beyond step two of the sequential evaluation process with respect to all of plaintiff's severe impairments and the combined effects of those impairments. See Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) (remanding for further proceedings where "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that Webb's claim was 'groundless'").

**CONCLUSION**

In light of the remand required by the ALJ's error at step two, the court is not required to address plaintiff's remaining arguments. Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility."). The undersigned notes that on remand the ALJ will necessarily be required to re-determine plaintiff's residual functional capacity in light of all her impairments and the entire

record, and to re-consider whether plaintiff is capable of performing any work in the national economy. Similarly, the ALJ will be required to re-evaluate plaintiff's testimony and any third-party statements regarding the severity of plaintiff's limitations caused by the combined effects of all her impairments and the impact those limitations have upon her.

In the re-determination of plaintiff's residual functional capacity, the ALJ must give proper weight to the opinions of plaintiff's consulting physicians. Plaintiff has argued that the ALJ failed to properly evaluate the opinions of the consultative examiners and improperly rejected the opinion of Dr. Mehtani, who opined that plaintiff's ability to relate to people, comprehend and follow instructions, relate to others, perform work where contact with others was minimal, and perform even simple tasks full time would be severely limited in a work environment. (Tr. at 208-12.) Plaintiff has asserted that the ALJ discounted Dr. Mehtani's opinions on the grounds that (1) the results of Dr. Mehtani's mental status examination were not included with the doctor's report; (2) the assessment appeared contradictory to the other evidence in the record; and (3) Dr. Mehtani was actively trying to assist plaintiff in obtaining benefits rather than rendering medical treatment. On remand, the ALJ shall obtain the results of Dr. Mehtani's mental status examination and consider them. The ALJ shall reconsider whether Dr. Mehtani's assessment contradicts any evidence in the record and consider whether any apparent contradiction merely reflects the progress of plaintiff's mental impairments. If necessary, additional evidence should be obtained to resolve the latter issue. Finally, the ALJ must keep in mind that the purpose for which a report is obtained does not provide a legitimate basis for rejecting it. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits. While the Secretary may introduce evidence of actual improprieties, no such evidence exists here."); Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996); Reddick v. Chater, 157 F. 3d 715, 726-27 (9th Cir. 1998). Thus, Dr. Mehtani's subjective judgments must be appropriately considered, absent evidence of impropriety, regardless of the ALJ's opinion regarding why they were obtained.

If the sequential evaluation proceeds to step five, the ALJ shall question a vocational expert in a manner that properly takes into account all limitations on plaintiff's ability to engage in work-related functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment). "Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence." Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). Here, it would appear clear that plaintiff's limitations are, in large part, non-exertional. In such circumstances, the grids co not "accurately and completely describe the claimant's abilities and limitations" and co not take into account the limitations imposed by the claimant's impairments. Burkhart, 856 F.2d at 1340; Reddick, 157 F.3d at 729.

In accordance with the above, IT IS ORDERED that:

1. Plaintiff's motion for remand (Doc. No. 20) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 24) is denied;

3. The decision of the Commissioner is reversed; and

4. This case is remanded for further administrative proceedings consistent with the analysis set forth herein.

DATED: March 27, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/voong1990.order